ALFRED OGDEN AND OTHERS, PLAINTIFFS-APPELLANTS, v. CHARLES STERNICK AND ANOTHER, ETC., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1950—Decided November 22, 1950.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Richard J. Congleton* argued the cause for the appellants (*Messrs. Young, Shanley, Foehl & Fisher,* attorneys).

*Mr. Saul Cohen* argued the cause for the respondents.

The opinion of the court was delivered by

BIGELOW, J. A. D.  Plaintiffs, who grow apples at Kinderhook, New York, sold to defendants, who are produce merchants in Newark, 5,755 boxes of apples which were then in cold storage on plaintiffs' farm. The total agreed price was $15,229, f. o. b. storage. Defendants took out of storage 2,242 boxes but refused to remove the rest. Defendants paid or deposited with plaintiffs various sums which have been credited on the apples withdrawn, leaving a balance on hand of $1,860. The sale was made in the fall. Toward the end of December, the plaintiffs noticed that defendants' apples were beginning to show signs of deterioration and plaintiffs considered that they should be removed from storage very soon. They urged defendants to take and pay for the apples, but the defendants were unwilling to do so at that time, and eventually, during the latter part of February and early March, plaintiffs resold the apples to other parties for $2,928. On these facts, which are the subject of the first count, the plaintiffs demand judgment for the balance of the contract price.

It appeared, however, from the evidence presented by the plaintiffs themselves that the contract between the parties permitted the defendants, at their option, to leave the apples in storage until May 1st.

196

At the close of plaintiffs' case, defendants moved that the first count of the complaint be dismissed and that judgment be entered in their favor on the counterclaim for the balance of the money deposited with plaintiffs, less, however, the amount claimed by plaintiffs on their second count. Judge Francis, in granting the motion, stated the facts and the law with admirable clarity:

"The Court: The defendants move for dismissal of the first count of the complaint on the ground that the plaintiffs' proof has failed to show any breach by the defendants of the agreement on which the claim set forth in that count is predicated.

"The evidence discloses that the parties agreed, the plaintiffs to sell and the defendants to buy at fixed prices, a large quantity of apples then in the plaintiffs' cold storage warehouse. As part of the agreement plaintiffs undertook to keep the apples in storage at the defendants' risk and subject to their delivery call for the season, which meant until the May following the contract.

"The agreement further was that the defendants would pay for the apples as they were taken from the place of storage and delivered to them. Likewise, it was agreed that the defendants would make a deposit against the purchase price of the apples, which deposit was to be held by the plaintiffs as the apples were being withdrawn at intervals and then applied against the last delivery.

"It appears from the plaintiffs' proof that in January or February of 1948 the apple market was rapidly declining, and that plaintiffs' manager noticed some deterioration in the stored apples. So he talked to one of the defendants about moving the apples, that is, taking delivery of the remainder of them. The defendants took some, represented by a purchase price somewhat in excess of $3,000. The apples included by this sum were not paid for on delivery. However, the plaintiffs concede that they were delivered on the mutual understanding that the price would be charged against the $6,000 deposit. The plaintiffs communicated with the defendants requesting them to move the remainder of the apples out of storage and to pay for them. In their letters also they demanded payment of the $3,000 representing the price of the last deliveries. Finally they advised the defendants that if this sum were not paid and the remaining boxes of apples accepted for delivery the remainder would be sold for the account of the defendants. Upon receiving no word from the defendants the plaintiffs sold in the open market the remainder of the apples and sustained the loss represented by the first count of this complaint.

"Now, when this contract was made between the parties for the apples then in storage, under the law the title, the ownership to them, passed to the defendants. From that time on, as the agreement indicates, the boxes of apples were to remain in storage subject to the buyers' delivery call and payment, and at the buyers' risk for the

season or until May, 1948. The buyer had the right to leave them all there and take delivery on the very last day of the season if he saw fit to run the risk, and the plaintiffs having made the agreement had no right to demand the removal or acceptance of delivery prior to that time, at least in the absence of a breach of the contract by the defendants.

"When the plaintiffs wrote the letters and the telegram to the defendants demanding removal and payment, defendants had been guilty of no breach of the agreement and, therefore, plaintiffs had no legal right to demand that defendants take immediate delivery and make immediate payment therefor. So when the plaintiffs sold the remaining boxes, as they put it, for the defendants' account, they became guilty of a breach of the contract themselves and not entitled to recovery for any loss suffered by them through such sale.

"It has been suggested that the plaintiffs were holding the apples as security for the balance of the purchase price, and when they saw the deterioration in the market and in the condition of the apples they had the right to protect themselves by demanding that the defendants accept delivery and make payment, and in default thereof to sell in the open market. But there was no such provision in their contract and it cannot be implied or read into the contract. The law cannot make a better contract for the parties than they made themselves.

"Under the agreement the security the plaintiffs had was not apples but money, $6,000 on deposit. That they permitted some of it, that is, some of the $6,000 to be used by the defendants does not help them nor create a breach of the agreement by the defendants.

"Accordingly, the motion of the defendants for dismissal of the plaintiffs' claim as represented by the first count of the complaint will be granted.

"So far as the second count is concerned which deals with the item of $324, that stands uncontradicted at the moment.

"Since I have taken the view that it was not the defendants but the plaintiffs who breached this contract the defendants are entitled to a judgment on their counterclaim for the balance that remained on deposit with the plaintiffs as of the time of the sale of the apples by the plaintiffs.

"Is there any dispute as to the amount which was then on deposit?

"Mr. Cohen: The complaint sets forth $1,860.

"The Court: If $1,860 represents the balance due exclusive of the $324, and the defendants claim $1,536 now, that will, in effect, give credit for the $324.

"I will grant the motion for judgment on the counterclaim in favor of the defendants and against the plaintiffs in the amount of $1,536."

The plaintiffs appeal and place their reliance on the Uniform Sales Law. *R. S.* 46:30–1 *et seq.*, and especially section 67(1):

"Where the goods are of a perishable nature, or where the seller expressly reserves the right of resale in case the buyer should make default, or where the buyer has been in default in the payment of the price an unreasonable time, an unpaid seller having a right of lien or having stopped the goods *in transitu* may resell the goods. He shall not thereafter be liable to the original buyer upon the contract to sell or the sale or for any profit made by such resale, but may recover from the buyer damages for any loss occasioned by the breach of the contract or the sale."

The plaintiffs were unpaid sellers; they had a right of lien; the apples were of a perishable nature, and, therefore, they contend they had a statutory right to sell the apples, even though the defendants were not in default and had a right under the contract to leave the apples in plaintiffs' storage plant for two months longer. We do not so construe the statute. The seller cannot resell unless the buyer is in default. Even though the buyer is in default, the seller cannot resell unless the default has continued an unreasonable length of time, or unless the seller has expressly reserved the right of resale, or unless the goods are of a perishable nature. Power to enforce a lien by sale although the owner is nowise in default, would be so extraordinary that, in the absence of express words to that effect, the statutory power should be limited to cases in which there has been a default. *Schwartz v. King, etc., Co.*, 93 *N. J. L.* 111 (*Sup. Ct.* 1919); *State v. Packard Bamberger & Co.*, 123 *N. J. L.* 180 (*Sup. Ct.* 1939). Again, the legislative intent is made clear by the last clause of the section which provides that after the resale, the seller may recover "damages for any loss occasioned by the breach of the contract or the sale." There must be a breach, or the resale is not authorized.

The same result is reached in this case by treating the plaintiffs' agreement that defendants might defer removing the apples and paying for them until May, as a waiver of any statutory right of resale that might otherwise be considered to exist.

The judgment is affirmed with costs.